UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | Case No. 25-cr-230 (RCL) |
| v. : | |
| : | |
| WILLIAM EDWIN ALLAUN, : | |
| : | |
| Defendant. : | |

## UNITED STATES' MEMORANDUM IN SUPPORT OF PRE-TRIAL DETENTION

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits this memorandum in support of its oral motion that William Allaun (hereafter, the "Defendant") be detained pending trial, pursuant to 18 U.S.C. § 3142(f)(1)(A) (crime of violence).

On July 28, 2025, the Defendant was charged by Complaint with one count of Receipt of Child Pornography, in violation of 18 U.S.C. §§ 2252(a)(2) and (b)(1). On July 30, 3035, the Defendant was arrested. At his initial appearance before the Honorable Zia M. Faruqi that same day, the United States requested his detention pending trial pursuant to the above-referenced provision of the federal bail statute. A detention hearing was initially scheduled for August 1, 2025 and subsequently continued to August 14, 2025, at the parties' joint request. *See* ECF No. 8. On August 12, 2025, the Defendant was charged by indictment [ECF No. 10] with one count of Receipt of Child Pornography, in violation of 18 U.S.C. §§ 2252(a)(2) and (b)(1). On August 13, 2025, the detention hearing was again continued. It is now scheduled for September 30, 2025.

Pursuant to 18 U.S.C. § 3143(e)(3)(E), there is a rebuttable presumption in favor of detention. For reasons discussed below, the United States respectfully submits that the factors weigh in favor of detention, and that the Defendant cannot overcome the presumption.

Accordingly, and because the Defendant poses a risk to community safety that cannot be sufficiently mitigated, the United States respectfully requests that he remain detained pending trial.

### I. Factual and Procedural Background

The charges stem from the Defendant's use of an encrypted messaging application – Signal – to receive child sexual abuse material ("CSAM"). As further detailed below, in addition to his receipt of multiple videos containing CSAM, which forms the basis for the instant charges, the Defendant was a member of a Signal group known by law enforcement to be used for the sharing of CSAM. Through his membership in this group, the Defendant received and possessed additional videos, including those depicting the abuse of young, prepubescent children by adult men.

In July 2025, after obtaining judicial authorization to seize and search the cellular phone of a subject previously arrested in the District of Columbia (hereinafter, "SUBJECT 1"), law enforcement identified communications between SUBJECT 1 and another individual, later identified as the Defendant. Based on the review of SUBJECT 1's device, SUBJECT 1 and the Defendant, who appeared to have been in communication as far back as May 2022, used multiple methods of communication, including Signal and Telegram, another encrypted messaging application. In May 2025, the Defendant asked SUBJECT 1 if s/he had "…anything small you can send me…" before receiving fifteen videos from SUBJECT 1, all constituting CSAM.

Specifically, on May 22, 2025, Signal messages between SUBJECT 1 and the Defendant included, in relevant part:

| Sender | Message | Date and Time |
|---|---|---|
| **Will Allun** | **Hey dude** | **05/22/2025 1:03 AM EDT** |

| SUBJECT 1 | Hi there. | 05/22/2025 1:04 AM EDT |
|---|---|---|
| **Will Allun** | **Horny. As. Fuck.** | **05/22/2025 1:05 AM EDT** |
| SUBJECT 1 | I just added you to a group called [***]¹ | 05/22/2025 1:06 AM EDT |
| **Will Allun** | **I'm on. Thanks! You have anything small you can send me?** | **05/22/2025 1:06 AM EDT** |
| SUBJECT 1 | Did you get it? Can you see the vides that are there | 05/22/2025 1:07 AM EDT |
| SUBJECT 1 | There's probably some sprinkled in there | 05/22/2025 1:07 AM EDT |
| **Will Allun** | **It's a blank chat** | **05/22/2025 1:07 AM EDT** |
| SUBJECT 1 | Okay. You'll see the videos that get posted from now | 05/22/2025 1:07 AM EDT |
| **Will Allun** | **Gotcha** | **05/22/2025 1:08 AM EDT** |
| **Will Allun** | **Thanks for adding me** | **05/22/2025 1:08 AM EDT** |
| SUBJECT 1 | I will forward some vids | 05/22/2025 1:08 AM EDT |
| **Will Allun** | **Thanks dude! Appreciate it** | **05/22/2025 1:08 AM EDT** |
| SUBJECT 1 | *** sent 15 videos, all of which depicted adult males engaged in sexually explicit conduct with prepubescent males, including oral sex and anal sex. *** | 05/22/2025 1:09 AM EDT |
| **Will Allun** | **Damn thanks man!!** | **05/22/2025 1:11 AM EDT** |
| SUBJECT 1 | You're welcome | 05/22/2025 1:12 AM EDT |
| **Will Allun** | **That last one was especially hot** | **05/22/2025 1:13 AM EDT** |
| SUBJECT 1 | Yeah, the older/younger action ones are the bEDT | 05/22/2025 1:14 AM EDT |

---

¹ The Signal group name has been withheld for investigative reasons.

| Will Allun | Agree totally | 05/22/2025 1:15 AM EDT |
| Will Allun | And I especially love white dick | 05/22/2025 1:15 AM EDT |
| Will Allun | I'm leaking all over my bed | 05/22/2025 1:16 AM EST |

Later that same day, the Defendant asked SUBJECT 1 how "often" the Signal group chat "pop[s]" off. When asked by SUBJECT 1 what he meant, the Defendant clarified that he was asking how "active" the group was.

## II. Legal Authority

The Bail Reform Act permits a judicial officer to hold an individual without bond pending trial if the officer finds clear and convincing evidence that "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(e). Pursuant to 18 U.S.C. § 3142(f)(1)(A), the judicial officer shall hold a hearing on the question of detention upon the motion of the government in a case that involves a crime of violence.

Under 18 U.S.C. § 3142(e)(3)(E), the charged offense carries a rebuttable presumption that the Defendant presents a danger to the community and that no pretrial release condition or combination of conditions may be imposed to assure the safety of any other person and the community. This presumption "operate[s] at a minimum to impose a burden of production on the defendant to offer some credible evidence contrary to the statutory presumption." *United States v. Alatishe*, 768 F.2d 364, 371 (D.C. Cir. 1985); *United States v. Portes*, 786 F.2d 758, 764 (7th Cir. 1985) (observing that the presumptions in § 3142(e) "are rebutted when the defendant meets a burden of production by coming forward with some evidence that he will not flee or endanger

the community if released").

In determining whether the defendant has overcome that presumption, the Court must consider the following factors: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the defendant; (3) the history and characteristics of the defendant; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the defendant's release. *See* 18 U.S.C. § 3142(g).

Even when the defendant has offered evidence to rebut the presumption of dangerousness, the presumption remains a factor in the court's analysis of the section 3142(g) factors. *See United States v. Ali*, 793 F. Supp. 2d 386, 388 (D.D.C. 2011). As the Sixth Circuit has observed, "[t]he presumption [of dangerousness] remains as a factor because it is not simply an evidentiary tool designed for the courts. Instead, the presumption reflects Congress's substantive judgment that particular classes of offenders should ordinarily be detained prior to trial." *United States v. Stone*, 608 F.3d 939, 945-46 (6th Cir. 2010) ("To rebut the presumption, therefore, a defendant should 'present all the special features of his case' that take it outside 'the congressional paradigm.'").

**III.    Analysis**

Due to the nature of the charged offense, the Defendant is presumptively dangerous under Section 3142(e)(3)(E) of the Bail Reform Act. The United States respectfully submits the Defendant cannot rebut the presumption in favor of detention, and there are no conditions of release adequate to reasonably assure community safety. Therefore, this Court should detain the Defendant pending trial.

    **A.    Nature and Circumstances of the Offense Charged**

The United States respectfully submits that the nature and circumstances of the offense weigh in favor of detention. The serious and significant nature of the offense charged is reflected

5

in the applicable statutory penalty, which subjects the Defendant to a five-year mandatory minimum term of imprisonment and the statutory maximum sentence of up to 20 years' incarceration if convicted. *See* 18 § 2252(b)(1). It is also reflected in the statutory presumption in favor of detention. *See* 18 U.S.C. § 3142(e)(3)(E).

This recognizes that it is the very conduct perpetrated by the Defendant that creates the underlying demand for videos depicting the rape and sexual abuse of our community's most vulnerable members, young children. "Child pornography depicts pictorial evidence of physical sex abuse against and exploitation of children and the production and distribution of such contraband carries a multitude of harms." *United States v. Galarza*, No. 18-MJ-146 (RMM), 2019 WL 2028710, at *6 (D.D.C. May 8, 2019) (Howell, C.J.) (reversing release order); *United States v. Nickelson*, No. 18-MJ-102 (GMH), 2018 WL 4964506 (D.D.C. Oct. 15, 2018) (Howell, C.J.) (same); *United States v. Blanchard*, No. 18-MJ-101 (GMH), 2018 WL 4964505, at *4 (D.D.C. Oct. 15, 2018) (Howell, C.J.) (same). The harm and cost to our communities caused by the actions of the Defendant cannot, and should, not be minimized.

As detailed above, the Defendant received multiple videos constituting CSAM and depicting very young – prepubescent – children. His response to the videos, as borne out by the messages set forth above, make clear that he not only knew what he was receiving but wholeheartedly embraced it. Moreover, he appears to have been seeking even more content, beyond the fifteen videos sent by SUBJECT 1. Specifically, after being added to the Signal group chat, he advised SUBJECT 1 that it appeared to be a "blank" chat. After being told he would get any videos posted going forward, the Defendant appears to have been impatient for additional content, asking SUBJECT 1 how active the group chat was.

Children captured in images and videos depicting their sexual abuse are significantly

harmed when the images and videos are created, and their re-victimization occurs whenever an individual, such as the Defendant, views and shares these images for his own and others' sexual gratification.  *See Galarza*, 2019 WL 2028710, at *6 (noting that "'the perpetual nature of child pornography distribution on the Internet causes significant additional harm to victims,' [who] 'live with persistent concern over who has seen images of their sexual abuse' and how those images are being used to cause additional harm.'" (quoting U.S. SENT'G COMM'N, FEDERAL CHILD PORNOGRAPHY OFFENSES (Dec. 2012) at vii); *Nickelson*, 2018 WL 4964506, at *4 (same); *Blanchard*, 2018 WL 4964505, at *4 (same).  This is the very harm that the Defendant's conduct – soliciting and receiving CSAM and participating in a group whose purpose was to share that very material – causes.

> B.      **The Weight of the Evidence Against Defendant**

The United States also respectfully submits that the strength of the evidence against the Defendant similarly weighs in favor of detention.  Where, as here, "the government possesses overwhelming evidence that the defendant is guilty of the crime charged—and the nature of the charged offense involves a danger to the community—then the second factor will help meet the government's burden of persuasion."  *United States v. Taylor*, 289 F. Supp. 3d 55, 66 (D.D.C. 2018).

The United States is in possession of the Signal messages between the Defendant and SUBJECT 1, which reflect his receipt of multiple CSAM videos on May 22, 2025.  A judicially authorized search of the Defendant's cellphone also demonstrates his membership in the Signal group referenced above, as well as his possession of approximately 20 additional CSAM videos sent via the group.  Nor can he meaningfully argue that he did not view the images or was not aware of what was sent, given his enthusiastic response to SUBJECT 1 following his receipt of

the videos. Moreover, following his arrest, he waived his *Miranda* rights and provided a statement to law enforcement, acknowledging his relationship with SUBJECT 1. Although he denied that he personally had a sexual interest in minors, claiming only an interest in SUBJECT 1, and any involvement in additional activity involving CSAM, he ultimately admitted to having viewed at least one video containing CSAM.

### C.  The Defendant's History and Characteristics

The United States respectfully submits that the third factor concerning the Defendant's history and characteristics also weighs in favor of detention. To be clear, the Defendant lacks any criminal history. Nor has the United States, to date, found evidence that he was involved in distributing CSAM or that he possessed additional devices or hard drives containing CSAM. The Defendant, however, appears to have been highly motivated to seek out CSAM, and unable or unwilling to restrain his impulses to do so. Indeed, even after he was added to the Signal group chat, he was seemingly unable to wait until content was accessible, asking SUBJECT 1 to send him something "small." Nor does it appear that even the content sent by SUBJECT 1 was sufficient to satisfy his desires and impulses, given his later inquiry to SUBJECT 1 about how active the group chat was. Put simply, his lack of significant criminal history and any other mitigating circumstances are eclipsed, or at the very least offset, by the Defendant's criminal conduct. Notwithstanding his self-serving statements that he is not sexually interested in minors, his conduct demonstrates impulsivity, a desire to seek out CSAM, and an inability to restrain his actions.

### D.  Danger to the Community

The nature and seriousness of the danger to any person or the community posed by the Defendant's release points squarely towards detention. That the Defendant poses a danger to the

8

community is presumed by statute, *see* 18 U.S.C. § 3142(e)(3)(E), and should be factored into the Court's analysis, even if contrary evidence is presented. *See Ali*, 793 F. Supp. 2d at 388. And as discussed above, the dangers concomitant with the Defendant's conduct cannot be understated—the distribution of child pornography results in severe mental, emotional, and physical trauma to the children victimized by offenders, such as the Defendant, who seek sexual gratification through viewing and sharing of images depicting the sexual abuse of children. It is precisely "[t]hese significant harms and dangers [that] animated the Congress to create the statutory presumption of detention in these cases." *Galarza*, 2019 WL 2028710, at *7.

Release conditions cannot sufficiently mitigate this danger and prevent the Defendant from covertly reengaging in the offense conduct. Given "the ubiquity of internet-capable devices[,]" the challenges in fashioning release conditions to mitigate the danger the Defendant's release presents are "insurmountable[.]" *See United States v. Dhavale*, 2020 WL 1935544, at *5 (D.D.C. Apr. 21, 2020). This is particularly true in a case such as this, where it is clear the Defendant appears to have been highly motivated, and even impatient, in his efforts to access CSAM. Indeed, it appears that his impulses and desires to obtain content were not even quelled after receiving the content sent by SUBJECT 1, given his subsequent inquiries regarding the activity level of the Signal group chat. Moreover, he appears to have used at least two encrypted messaging applications in his communications with SUBJECT 1, demonstrating some level of technical knowledge and a desire to evade potential detection. In sum, given the Defendant's demonstrated motivation to access CSAM under circumstances that indicate an inability to restrain himself, the Court should have no confidence that the Defendant is capable of conforming his conduct with release conditions.

## IV. Conclusion

For the foregoing reasons, the United States respectfully requests that the Court issue an Order granting its Motion that the Defendant be held without bond pending trial.

        Respectfully submitted,
        Jeanine Ferris Pirro
        UNITED STATES ATTORNEY

        By: */s/ Andrea Duvall*
        ANDREA DUVALL
        AR Bar Number 2013114
        Assistant U.S. Attorney
        United States Attorney's Office
        601 D Street NW
        Washington, D.C. 20530
        Telephone: (202) 252-2408
        andrea.duvall@usdoj.gov